**Donald C. SEVERTSON, Gary L. Jones, Richard Swenberger, Mary F. Logeland and Jacob B. Provost, Plaintiffs,**

v.

**PHILLIPS BEVERAGE COMPANY and Ed. Phillips & Sons, Co., Defendants.**

Civ. No. 3–90–304.

United States District Court,
D. Minnesota,
Third Division.

Magistrate Order Dec. 17, 1991.

Jan. 24, 1992.

Rebecca K. Troth, Jane Lang, Sprenger & Lang, Washington, D.C., Paul C. Sprenger, Jean M. Boler, Thomas L. Garrity, Sprenger & Lang, Minneapolis, Minn., for plaintiffs.

Ernest I. Reveal, Thomas B. Hatch, Nancy J. Nelson, Robins Kaplan Miller & Ciresi, Minneapolis, Minn., for defendants.

### ORDER

ALSOP, District Judge.

The above entitled matter comes before the court upon appeal by defendants from two orders of United States Magistrate

Judge Franklin L. Noel, both filed on December 17, 1991. Also before the court is the motion of defendants to strike the affidavit of Timothy W. Zastoupil, which affidavit was filed with the court by plaintiffs along with plaintiffs' memorandum in opposition to defendants' appeal.

After careful consideration of the briefs of the parties, the orders of the magistrate judge, and all the files, records, and proceedings herein, the court finds that Magistrate Judge Noel's orders are neither clearly erroneous nor contrary to law. The court also finds that the affidavit of Timothy W. Zastoupil must be stricken from the record.

Accordingly,

IT IS HEREBY ORDERED That:

1. The affidavit of Timothy W. Zastoupil is STRICKEN; and

2. The orders of United States Magistrate Judge Franklin L. Noel filed December 17, 1991, docket entries 104 and 105, are AFFIRMED in all respects.

DATED: January 24, 1992.

## ORDER

FRANKLIN L. NOEL, United States Magistrate Judge.

This matter was before the undersigned United States Magistrate Judge on October 31, 1991 for a hearing ordered by the District Court Chief Judge Alsop to determine whether the plaintiffs have submitted evidence establishing a "colorable basis for their claim that a class of 'similarly situated' plaintiffs exist" prior to authorizing plaintiffs to mail a notice of rights to potential opt-in plaintiffs notifying them that they have the right to join in this lawsuit. Also before the court is plaintiffs' motion to extend the pretrial schedule. Paul Sprenger, Esq., appeared on behalf of plaintiffs Donald C. Severtson, Gary L. Jones, Richard Swenberger, Mary F. Logeland and Jacob B. Provost. Thomas Hatch, Esq., appeared on behalf of defendants Phillips Beverage Company and Ed. Phillips & Sons, Co.

*I. Plaintiffs' Motion Concerning Age Notices and Discovery of Former Employees Who Are Potential Plaintiffs.*

*A. Factual and Procedural Background*

Plaintiffs, five former employees of Phillips Beverage Company and Ed. Phillips & Sons Co., filed this age discrimination suit on May 9, 1990, alleging that they were terminated because of their age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.* Plaintiffs also allege in their complaint that defendants have engaged in a recent pattern and practice of age discrimination in violation of the ADEA, and seeks to bring a claim in behalf of a class defined as:

All persons who were employed by Phillips, including any of its wholly-owned subsidiaries, whose employment was terminated by or at the direction of Phillips at any time after they became 40 years old, and whose claims are within the applicable limitations period.

Complaint, ¶ 9.

On January 22, 1991, plaintiffs moved the court for an order authorizing the sending of a Notice of Rights in Age Discrimination Lawsuit, with a Consent to Join Lawsuit attached, to all potential opt-in ADEA class members, as the class is defined in the plaintiffs' complaint. Plaintiffs' counsel sought in addition an order requiring defendants to provide the names and last known addresses of all persons within plaintiffs' proposed class. The undersigned granted plaintiffs' motions.

Defendants objected to this court's order granting plaintiffs' motions. On appeal, District Court Chief Judge Alsop reversed this court's order and remanded plaintiffs' motions to the undersigned for a rehearing with instructions that this court determine whether plaintiffs have shown a colorable basis for their claim that this case should be allowed to proceed as a collective action as a prerequisite to authorizing plaintiffs to send opt-in notices to potential plaintiffs.

The Supreme Court of the United States held in *Hoffman–LaRoche, Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), that the district courts have discretion, in appropriate cases, to

facilitate collective actions in ADEA cases by authorizing plaintiff to send notice to other potential plaintiffs of the claims raised in a suit. Although the Court reasoned that the statute granted the court the "requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to the statutory commands or the provisions of the Federal Rules of Procedure," the Court gave very little guidance in determining appropriate cases in which facilitating notice to potential class plaintiffs is proper. *Id.*, 110 S.Ct. at 486.

As Judge Alsop observed in his order, courts have not applied a uniform standard in determining whether a case is appropriate for authorized notice. *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D.Minn.1991). Courts have authorized notice under varying circumstances. Some courts require only a minimum showing, allowing authorization based upon mere allegations in the complaint. *See, e.g., Behr v. Drake Hotel*, 586 F.Supp. 427, 430–31 (D.Ill.1984); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442–45 (N.D.Ill.1982); *Sussman v. Vornado, Inc.*, 90 F.R.D. 680, 684 (D.N.J.1981). Other courts require some factual showing before authorizing notice. *See Sperling v. Hoffman–La-Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. 1988), *aff'd in part*, 862 F.2d 439 (11th Cir.1988), *aff'd*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *see also Haynes v. Singer Co., Inc.*, 696 F.2d 884 (11th Cir. 1983). At least one court requires a showing similar to that required for certification of a class under Federal Rules of Civil Procedure 23 before authorizing notice. *See, e.g., Shushan v. University of Colorado*, 132 F.R.D. 263, 268 (D.Colo.1990).

Considering the great discretion allowed district courts in authorizing notice, Judge Alsop expressed concern in authorizing notice on the basis solely of allegations in the complaint. Judge Alsop observed that "in seeking court-authorized notice, plaintiffs are in effect asking this court to assist in their efforts to locate potential plaintiffs and thereby expand the scope of this litiga-

tion" thereby possibly stirring up litigation that would not otherwise have been brought by former employees of defendants. *Severtson*, 137 F.R.D. at 266. Other courts have expressed similar concerns in avoiding stirring up litigation from the appearance, created by the judicially authorized notice sent to potential opt-in plaintiffs, of meritorious claims at a stage in the litigation where there has been no determination made that the claims actually have merit. *See, e.g., Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir.1982). Judge Alsop further observed that allegations alone are an insufficient basis for determining whether a manageable class exists. These concerns are to be balanced with the court's interests in sound case management by avoiding multiplicity of duplicative suits, expediting the disposition of the action, and insuring that the notice is timely, accurate and informative. *See Sperling*, 110 S.Ct. at 487. Other legitimate interests of the court include concerns of judicial economy and effectuating the purpose of the ADEA by affording potential plaintiffs the maximum opportunity to vindicate their statutory rights. *See Johnson v. American Airlines, Inc.*, 531 F.Supp. 957 (D.Tex.1982).

In order to effectuate this balance, Judge Alsop held that this court should authorize the sending of opt-in notices to potential plaintiffs only when plaintiffs have established a colorable basis for their claim that a class of similarly situated plaintiffs exist. Plaintiffs have submitted affidavits supporting their arguments that such a class exists in this case. Defendants have also come forward with evidence which they claim rebuts plaintiffs' evidence and establishes that the issues in this case are not appropriate for litigation by collective action.

### B. Legal Analysis

#### 1. Standard of Review

■ Judge Alsop's order requires plaintiffs to come forward with evidence that establishes a colorable basis for their claim that the potential plaintiffs are similarly situated and that therefore this case is appropriate for certification as a collective action. A colorable basis means that plaintiff must come forward with something

more than the mere averments in its complaint in support of its claim. However, this court also concludes that its determination of whether a colorable basis exists for plaintiffs' claims does not require this court to make any findings of fact with respect to contradictory evidence presented by the parties nor does this court need to make any credibility determinations with respect to the evidence presented. Such findings will be made by the district court at the certification hearing if plaintiff meets its initial burden of establishing a colorable basis for its claims. As such, plaintiffs' burden is not a difficult one to establish.

*2. Plaintiffs have established that a colorable basis for their claim that a class of similarly situated plaintiffs exists warranting authorization for plaintiffs to send opt-in notices to other potential plaintiffs.*

Plaintiffs have submitted affidavits alleging that defendants' actions over a period of time adversely affected older employees. These allegations, also made in plaintiffs' complaint, include reductions in salary, displacement from previously assigned positions, and termination of a significant number of older employees, where often younger employees were then moved up or hired to replace older employees, all resulting in a wide-spread reduction in the number of older employees. In their recent affidavits, plaintiffs have now set forth the names and positions of numerous former employees who, in addition to plaintiffs, were allegedly affected by defendants' adverse actions. These factors alone, however, are not enough to support a collective action by similarly situated persons, where, as here, the alleged discrimination took place over a relatively long period of time and resulted in the termination of people who worked for numerous corporate entities and who held a variety of positions within those entities. *See Ulvin v. Northwestern National Life Ins. Co.,* 141 F.R.D. 130, (1991); *Lusardi v. Xerox Corp.,* 122 F.R.D. 463 (D.N.J.1988).[1]

Plaintiffs contend that there exists a common thread that ties a general pattern of discrimination running throughout the various subsidiaries of corporation. Plaintiffs allege in their complaint and in their recently submitted affidavits that there was central corporate control regarding nearly all major decisions within the subsidiaries, including employment decisions. Plaintiffs further allege that employment decisions were made by Edward Phillips and implemented through Michael Berns, the corporate Chief Operating Officer, pursuant to Mr. Berns' discussions with individual company presidents.

Plaintiffs have now come forward with additional evidence which they claim further supports their allegation that there was central control over employment decisions and that Edward Phillips directed Mr. Berns to implement restructuring measures having an adverse impact on older workers employed at the various corporate subsidiaries. Plaintiffs have come forward with a memo written by Edward Phillips in 1988 to management investors describing his implementation of a company-wide hir-

---

**1.** Although the defendants are correct in asserting that to be similarly situated, plaintiffs must share common issues of law and fact arising from the alleged discriminatory activity, the defendants' reliance on *Ulvin* and *Lusardi* as setting the standard for showing a colorable basis that a class of similarly situated plaintiffs exist is too exacting. In *Ulvin,* the court decided that the opt-in claims should be tried separately following completion of discovery when the clearest picture of the plaintiffs claims had been assembled. Only then the court concluded that given the disparities among the plaintiffs, the cases were unsuited for class action. *Id.,* 141 F.R.D. at 131. In *Lusardi,* the court did not allow a class due to the vast diversity of the potential plaintiffs. The court noted that without regard to departmental differences, members of the sample group of plaintiffs (64 out of possibly 1,300 plaintiffs) were employed by 17 different Xerox groups or organizations in 34 cities or towns in 16 different states. In the absence of a single company-wide reduction in force, the court found that the potential plaintiffs presented an unmanageable class. 122 F.R.D. at 465. Unlike *Lusardi,* the potential plaintiffs in the present case do not appear to be so diverse as to render them unmanageable as a class.

ing freeze except for two subsidiaries, stating that "[a]ny other exceptions must be approved by me [Phillips], personally, and will be dealt with on a case-by case basis." (Affidavit of Mary F. Logeland, pp. 4–5). Plaintiffs also argue that Mary F. Logeland was told by Jim DeKeyser, a subsidiary president, that Mr. Berns told him that he was getting rid of all the "dinosaurs" as a restructuring and money saving move.

Defendants do not dispute that all of the individual company presidents had discussions with Mr. Berns. However, defendants contend that any such conversations concerned economic recovery topics that were not a pretext for terminating older workers. Defendants further deny corporate control over the employment decisions of the various corporate entities and the existence of any corporate decision, policy or plan which adversely affected older employees. Mr. Berns also denies making any statements regarding termination of "dinosaurs" and Mr. DeKeyser denies ever repeating the statement to Ms. Logeland and further states that he cannot recall ever hearing the statements.

The undersigned finds that the plaintiffs have submitted sufficient evidence to meet their burden of establishing a colorable basis for their claim within the meaning of Judge Alsop's order. Plaintiffs have come forward with evidence tending to show central control of employment decision making, opportunity to implement corporate employment decisions and that the decision to terminate workers during the restructuring was made on the basis of age. The fact that these allegations are disputed by defendants does not mean that plaintiffs have failed to establish a colorable basis for their claim that a class of similarly situated plaintiffs exist. The key dispute over centralized control is a factual dispute which this court need not resolve here but is more properly resolved at the motion for certification of collective action.

The court will order that plaintiffs be allowed to send out opt-in notices in the form attached to this court's February 28, 1991 order. The court will further order that defendants provide plaintiff with names and address of potential plaintiffs to facilitate this end.

## II. Plaintiffs' Motion For An Extension of Dates Set In the Court's December 17, 1990 Pretrial Scheduling Order.

On September 16, 1991 the court took under advisement plaintiffs' motion to extend the pretrial scheduling order pending outcome of rehearing on plaintiffs' motion regarding the opt-in notices. As the court will grant plaintiffs' motion with respect to the opt-in notices and will also order defendants to produce the names of potential opt-in plaintiffs to plaintiffs and because there have been other ongoing discovery disputes in this case, the court believes that good cause exists to extend the dates set in the court's pretrial scheduling order. The court will issue a separate amended pretrial order concurrent with the issuance of this order.

Accordingly, upon consideration of plaintiffs' motion on remand and the opposition thereto,

IT IS ORDERED that:

1. Plaintiffs' motion for authorization to send Notice of Rights in Age Discrimination Lawsuit, with a Consent to Join Lawsuit attached, to all potential opt-in ADEA class members is GRANTED. Plaintiffs' are hereby authorized to mail, first class, notice in the form approved by this court in Exhibit A of its order dated February 28, 1991 (filed on March 4, 1991) to all potential opt-in plaintiffs. Plaintiffs' counsel shall adjust the dates in the notice as necessary to reflect the time periods established for responses to the notice;

2. Plaintiffs' motion to compel defendants to provide plaintiffs' counsel with the names and last addresses known of all potential opt-in ADEA class members is GRANTED. Defendants' shall, by January 31, 1992, provide to plaintiffs' counsel, the names and last known addresses of all potential opt-in ADEA class members. Specifically, defendants shall ascertain such information for all its employees and former employees who were 40 years of

age, and were involuntarily terminated from employment with defendants in any manner and/or laid off from the same on or after March 23, 1988;

3. Plaintiffs' counsel are directed to secure a post office box mailing address in the name of Clerk of Court and to make such arrangements as are necessary to maintain the mail received at that address on behalf of the Clerk pending its file with the clerk;

4. All completed consent forms shall be organized and filed by plaintiffs' counsel by March 31, 1991;

5. Plaintiffs' motion to extend the courts December 16, 1990 pretrial scheduling order is GRANTED. The court will issue a separate amended pretrial scheduling order.